IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDREW KALYL FOXX<br>    A/K/A JAMES ANDREW LILES<br>    A/K/A ANDREW JAMES LILES | Criminal No. 24-96 |

## **UNITED STATES' MEMORANDUM IN AID OF SENTENCING**

AND NOW comes the United States of America, by its attorneys, Eric G. Olshan, United States Attorney for the Western District of Pennsylvania, and Heidi M. Grogan, Assistant United States Attorney for said district, and submits this Sentencing Memorandum.

Upon consideration of all of the factors set forth in Title 18, United States Code, Section 3553(a), the government requests that the Court sentence Defendant Andrew Foxx, a/k/a James Andrew Liles. a/k/a Andrew James Liles, to a total term of 276 months' (23 years) imprisonment—a sentence in the high end of the advisory guideline range and agreed to by the parties—pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). The United States respectfully submits that a sentence of 276 months of imprisonment is a fair, just, and reasonable incarceration sentence that reflects the seriousness of the defendant's conduct in this particular case.

In the plea agreement, the parties reserved the right to argue their respective positions as to whether the defendant's sentence should run consecutively or concurrently to the defendant's anticipated state sentence for the sexual abuse of Foxx's minor victim and left the length of the defendant's term of supervised release to the Court's determination. The government now requests that this Court order the defendant's sentence to run at least partially consecutive to any anticipated state sentence. The United States also requests a significant period of supervised release following the defendant's release from prison—a term well above the statutorily prescribed mandatory

1

minimum of five years. The United States submits that this Courts should strongly consider ordering lifetime supervised release given Foxx's criminal history, which demonstrates escalating sexual offending against minors. A lengthy term of lifetime supervised release is necessary in this case to ensure that the public is protected as this Foxx reintegrates into society following his incarceration sentence.

I. PROCEDURAL HISTORY

Defendant Foxx has pleaded guilty to two counts involving the sexual exploitation of a minor—specifically, at Count One – Sexual Exploitation of a Minor (Production), in violation of Title 18, United States Code, Sections 2251(a) and (e) and, at Count Two – Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2). The egregious nature of the defendant's offenses is well known to the Court and was detailed at the Change of Plea Hearing held on May 15, 2024, and is set forth within the Presentence Investigative Report ("PSIR"). Doc. No. 63 at ¶¶ 14-19. The government underscores that the defendant took advantage of a minor who lived in close proximity and was twenty-six years younger than him. *See id.*

II. PENALTIES / ADVISORY GUIDELINE RANGE

At Count One, a violation of 18 U.S.C. §§ 2251(a) and (e), carries a mandatory minimum sentence of fifteen years and a maximum of 30 years of incarceration and, at Count Two, the maximum term of imprisonment for a violation of 18 U.S.C. § 2252(b)(2) is 10 years. *See* PSIR at ¶ 74. The defendant may also be sentenced to a term of supervised release in any term of years not less than five and up to life. 18 U.S.C. § 3583(k); *see* PSIR at ¶ 77. Here, with a criminal history category of I, and a total offense level of 38, the defendant's advisory guideline range is 235 months to 293 months. *See* PSIR at ¶ 75.

## III. TITLE 18, UNITED STATES CODE, SECTION 3553(a)

This Court must impose a sentence that is reasonable in light of the factors listed in Title 18, United States Code, Section 3355(a) (hereinafter "the Section 3553(a) factors"). In applying the Section 3553(a) factors, the Court must exercise its discretion, while recognizing and responding to all non-frivolous arguments of the parties. *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006). The district court's record should reflect "meaningful consideration of the relevant sentencing factors." *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010); *United States v. Larkin*, 629 F.3d 177, 197 (3d Cir. 2010); *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006). However, the Court need not discuss each factor if the record makes clear that the Court took all relevant factors into account in imposing the sentence. *United States v. Thornhill*, 759 F.3d 299 (3d Cir. 2014); *Cooper*, *supra*, 437 F.3d 329. In sentencing the defendant, the district court must articulate on the record that it "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The Court need not discuss every defense argument. *United States v. Quiles*, 618 F.3d 383, 397 (3d Cir. 2010). Section 3553(a) directs federal courts to impose sentences that are sufficient to account for each of the relevant Section 3553(a) factors but which are not greater than necessary.

Under the serious and disturbing facts of this case, the United States asks this Court to sentence the defendant to the parties' agreed-upon term of 276 months' imprisonment (23 years). The United States also asks the Court to impose a term of lifetime supervision. The United States further requests that the Court run part of the defendant's sentence at least partially consecutively to any anticipated state sentence. The United States' submits that such a sentence sufficiently accounts for each of the Section 3553(a) factors discussed below.

### a.       The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a))

The nature and circumstances of the defendant's offenses are egregious. Foxx took advantage of a minor known to him to satisfy his sexual desires. Foxx acted with undue influence when he seduced his minor victim by "dating" her before initiating a sexual relationship. Foxx further victimized the minor by secretly recording their sexual encounters, without the minor's knowledge, on multiple occasions. Further, Foxx "celebrated" his sexual encounter with the minor in the recording he made by audibly commenting on how "hot" it was that he was engaging in sexual intercourse with a fifteen year old. Other messages Foxx sent to his victim demonstrate that he used his age to exert influence over the minor. *See* PSIR at ¶ 17. Additionally, Foxx's messages to the minor demonstrate that he was fully cognizant of the illegal nature of his actions. *Id.* It is unconscionable for an adult to take advantage of a minor under the circumstances and in the manner in which Foxx victimized the minor here.

"[T]he 'victimization' of the children involved does not end when the camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). The consumption of child sexual abuse material (child pornography) perpetrates its proliferation. Consumers of child pornography, particularly consumers who also produce child pornography, like this defendant, contribute to the cycle of abuse and are in part responsible for the psychological and physical harm of the children used to produce the images. *United States v. Yeaple*, 605 F. Supp. 85, 86 (M.D. Pa. 1985); *see also New York v. Ferber*, 458 U.S. 747, 759 (1982). It is well-known that the victims of child sexual abuse experience life-long negative impacts, including anxiety, depression, and feelings of mistrust and self-doubt. They often require life-long therapy. Although the United States has no evidence that Foxx distributed his victim's images, it is common for a victim whose abuse was

4

documented digitally, as it was here, to have feelings of uncertainty concerning the potential circulation of the sexually explicit imagery created by their abuser.

     **b.**   **History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))**

As detailed within the PSIR, when interviewed by U.S. Probation, Foxx reported an extremely sad, challenging, and unstable upbringing. PSIR at ¶ 53. In particular, the United States has carefully considered the self-reported information stated within the PSIR at paragraph 53 and its impact on the defendant. Such experiences should not be endured by anyone. Nevertheless, this disclosure does not explain nor excuse the defendant's criminal conduct in this case, nor his criminal history which includes other sexual misconduct.

The United States notes that Foxx has two children of his own, around of the age of the victim in this case, who he has not seen in eight years/, in part due to Foxx's treatment of the children's mother. *See* PSIR at ¶¶ 42 & 57. Additionally, the PSIR informs that Andrew Kalyl Foxx is not the name the defendant was given at birth, but that he changed his name "for a fresh start" in 2014. *Id.* at ¶ 55. This name change occurred after Foxx had already committed serious crimes against females, including a minor, in another state. *Id.* at ¶¶ 39-40.

Unlike most sex offenders, Foxx comes before the court with a troubling criminal history. *See* PSIR at ¶¶ 39-46. However, because of the age of several of Foxx's prior convictions, they are not included in his criminal history score. *See* PSIR at ¶¶ 39, 40 & 41 (convictions excluded pursuant to U.S.S.G. 4A1.2(e)(3)). Other prior convictions simply do not count because they are misdemeanors for which Foxx did not receive a sentence of more than one year. PSIR at ¶¶ 42, 43, & 44 (convictions excluded from criminal history calculation pursuant to U.S.S.G 4A1.2(c)). Considered within the context of Foxx's criminal history, two of the "uncounted" misdemeanors help to paint a troubling picture of escalating criminal behavior and offending against females by

5

Foxx.  *See id.* at ¶¶ 42 & 43 (convictions for Violation of Injunction for Protection Against Domestic Violence (Florida) and Simple Assault (Pennsylvania)).

At the age of 18 years, Foxx pleaded guilty to Child Molestation in Cherokee County Superior Court, Canton, Georgia.  PSIR at ¶ 39 (this offense did not count towards Foxx's criminal history score due to its age).  The government understands that this conviction does not qualify as a "prior" conviction for the statutory sentencing enhancement under Section 2252[1]; nevertheless, the underlying conduct can be considered by this Court in fashioning the appropriate sentence.  *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").  The United States submits that such information concerning this defendant's background and character is critical to the Court's consideration of the appropriate term of supervised release because the underlying facts of Foxx's prior criminal convictions show that Foxx began sexually offending against minors long before he sexually abused the minor in the instant case.

Additionally, Foxx's 2004 convictions for Obstructing or Hindering Persons Making Emergency Telephone Call, Simple Battery, and Simple Assault—all against a female victim—a are similarly concerning and should be considered by the Court in imposing its sentence.  *See* PSIR at ¶ 40 (this offense did not count towards Foxx's criminal history score due to its age).  Although scant facts are available about this offense, at bare minimum, Foxx was indicted for physically

---

[1] Even under a "looser" categorical approach, Foxx's prior conviction pursuant to the Georgia statute in force at the time of his conviction does not support the enhanced penalties at Section 2252 because it is broader than the federal generic offense.  *See generally United States v. Portanova*, 961 F.3d 252 (2020) (sentencing court can look only to the fact of conviction and the statutory definition of the prior offense to see if the prior offense triggers the mandatory minimum sentence enhancement).

preventing a woman from making a 911 call for protection with intent to cause her physical harm. *Id.* This conviction occurred a mere two years after his 2000 Child Molestation conviction.[2] This conviction shows escalating and concerning criminal behavior.

Foxx then went through a period of approximately a decade where he remained conviction free, until 2016, when he was charged with Violation of Injunction of Protection Against Violence in St. Johns County Court, St. Augustine, Florida. *See* PSIR at ¶ 42. This case arose from a violation of a Protection of Abuse Order obtained by the mother of Foxx's children.[3] *Id.* Initially, adjudication for the offense was withheld and Foxx received 12 months' probation; however, for reasons unknown, a Probation Violation was filed; a warrant issued on May 19, 2017; and probation was terminated in May 2019. *Id.* Yet another offense against a female.

The United States further notes that a few months after committing filming himself sexually abusing the minor in this case, Foxx was arrested for verbal and physical assault of his reported adult girlfriend. PSIR at ¶ 43. Foxx pleaded guilty and was sentenced to two years' probation for this offense on May 7, 2024. *Id.* (conviction counts towards defendant's criminal history score). Foxx has a demonstrated history of offending against females.

In sum, defendant's criminal history evidences a troubling pattern of escalating criminal conduct against minors and females. None of Foxx's prior incarceration sentences and subsequent supervision have deterred him from committing future crime. The instant case demonstrates the defendant's continued disregard for the law and penchant for committing crimes against females. Foxx has demonstrated that he will continue to offend even when punished. The parties' agreed-

---

[2] It appears that Foxx's probationary sentence for the 2000 Child Molestation conviction was revoked because of this 2004 conviction and that he was sentenced on the violation to a period of "time served" that equated to approximately ten months' imprisonment (from March 2004 until January 12, 2005). *See* PSIR at ¶ 39.

[3] It is the United States' belief that Mr. Foxx contends that he and his partner never married.

upon sentence is necessary to promote respect for the law, adequately protect the community, and to deter his own future criminal conduct. Further, the United States urges this Court to carefully consider Foxx's prior criminal history and fashion a supervised release term accordingly. Given Foxx's criminal history as discussed herein and outlined in the PSIR, the United States submits that a term of lifetime supervised release is most appropriate.

   **c.**  **Seriousness of the Offense, Respect for the Law, Provision of Just Punishment (18 U.S.C. § 3553(a)(2)(A))**

The defendant's sentence should reflect the gravity of the offense and the need for retribution such that the punishment fits and the crime and the defendant is punished justly. *See Untied States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). This concept is especially applicable in the instant case because "child sex crimes are among the most egregious and despicable of societal and criminal offenses." *Id.*; *see also United States v. Foss*, 501 F.2d 522, 527 (1st Cir. 1974) (cited with approval in the legislative history of Section 3553(a)) ("[T]he view that punishment should fit the offender has never yet been held to eliminate general deterrence as a factor to be considered along with others . . . This is so even though general deterrence concerns itself not with the individual offender but with the sentence's impact on others.").

Here, Foxx violated his minor victim by not only sexually abusing the minor but by producing a permanent record of it. In *United States v. Goff*, the Third Circuit observed, when Congress passed the Child Pornography Prevention Act of 1996, Congress found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." 501 F.3d 250, 259 (3d Cir. 2007) (citing Child Pornography Prevention Act of 1996 ("CPPA"), Pub. L. 104-208, sec. 121, 110 Stat. 3009-26, reprinted in 18 US.C. § 2251 note at 611); *see also United States v. MacEwan*, 445 F.3d 237, 249-50 (3d Cir. 2006). The

Supreme Court explained, "[c]hild pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). Digital images can live on indefinitely and so does the harm to the victims of child pornography. *See* U.S. Sentencing Comm'n, *Report to Congress: Federal Child Pornography Offenses*, at vi (December 2012), *available at* http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (child pornography offenses "result in perpetual harm to victims and validate and normalize the sexual exploitation of children"). The victims live in fear that the people they interact with have viewed the sexual abuse images and will recognize them, leading to difficulty in maintaining jobs, relationships, and an increase in alcoholism later in life. *See id.* at 112-13. These victims "suffer by knowing that their images are being used by offenders for sexual gratification and potentially for 'grooming' new victims of child sexual abuse." *Id.* (footnote omitted).

The law is clear that child exploitation crimes warrant stringent sentences. Here, the government submits that the parties' proposed sentence of 276 months' incarceration, run partially consecutive to any state sentence, and followed by lifetime supervised release, will promote seriousness for the offenses and respect for the law, particularly as to those individuals who, like the defendant, will victimize children unless and until they are caught. The parties' proposed incarceration sentence is necessary and just punishment for Foxx, whose continued and escalating criminal conduct, demonstrates that he thinks he is above the law.

### d. Deterrence of Others (18 U.S.C. § 3553(a)(2)(B)) and Protection of the Public (18 U.S.C. § 3553(a)(2)(C))

Based on the egregious nature of the defendant's criminal misconduct, there is a

compelling need to deter future similar conduct by him and other like-minded individuals with an interest in the creation of child sexual abuse material (child pornography). Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See Rita,* 551 U.S. at 349. In fact, courts have placed a high importance on the need for deterrence in cases of hands-on abuse of children due to the "heightened concern in sex offense cases with an offender's potential for recidivism." *United States v. Armendariz*, 451 F.3d 352 (5th Cir. 2006). As the *Armendariz* court noted: "[e]specially in the case of a sex crime—and particularly for one involving a child—the need for deterrence, protecting the public, and providing the offender with necessary correctional treatment are highly relevant factors that should [be] effectuated in the sentence . . . imposed." *Id.* at 362.

To the extent the defense may argue for a shorter term of supervised release due to the age the defendant will be upon release from prison—there is ample evidence that even older men commit horrific crimes against children. *See United States v. Seljan*, 547 F.3d 993, 997-98 (9th Cir. 2008) (*en banc*) (87 year old defendant sentenced for sexually abusing children); *see also United States v. Zastrow*, 534 F.3d 854, 855 (8th Cir. 2008) (73-year-old man sentenced for enticing or coercing an 8-year-old girl into sexually explicit conduct which he photographed). Mr. Foxx's criminal conduct here demonstrates a sexual deviancy combined with an utter disregard for the rule of law that justifies the government's concern that he may continue to put the community at risk, regardless of his age, upon release. This concern can be adequately addressed by an order of lifetime supervised release.

Children are the most defenseless members of our society and this Court's sentence must protect them from this defendant, as well as provide general deterrence for others who may consider engaging in similar conduct. The United States' requested sentence, followed by lifetime

supervised release, will adequately deter others and protect the community from this defendant.

    e.  **Need to Avoid Sentencing Disparity (18 U.S.C. § 3553(a)(6))**

The government submits that the parties' sentencing recommendation—a term within the advisory guideline range—is sufficient but not greater than necessary while avoiding sentencing disparities. The United States' recommended sentence is not unreasonable, and certainly would not be anomalous in the context of production of child pornography sentences within the Western District of Pennsylvania, particularly given Foxx's criminal history.

**IV. RESTITUTION**

Pursuant to 18 U.S.C. § 3663A, restitution is mandatory. Per the plea letter, the government asks the Court to award restitution in an amount of at least $3,000.00 to the minor victim of Foxx's offenses. *See* PSIR at ¶ 137.

**V. FORFEITURE**

The government asks that the Court order forfeiture as indicated at paragraph 89 of the PSIR and as stated in the plea agreement between the parties—that is, forfeiture of one (1) red Android cellular telephone with IMEI 357492498422359.

**VI. VICTIM IMPACT**

The victim and the victim's parent have informed the United States that either or both may decide to present the Court with a Victim Impact Statement at the time of the sentencing hearing.

Under Federal Rule of Criminal Procedure 32(i)(4)(B), before a sentence is imposed, this Court is required "to address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard." This provision is intended to incorporate the terms of the Crimes Victims' Rights Act ("CVRA"), which recognizes that victims of federal crimes have the right "to be reasonably heard" in judicial proceedings with respect to sentencing. *See* 18 U.S.C. §

3771(a)(4); *United States v. Degenhardt*, 405 F.Supp.2d 1341, 1344-47 (D. Utah 2005) (discussing the Act's legislative history). Moreover, a crime victim or the crime victim's lawful representative can assert the right to be heard, *see* 18 U.S.C. § 3771(d)(1), and "[i]n the case of a crime victim who is under 18 years of age, the legal guardians of the crime victim, . . . family members, or any other persons appointed as suitable by the court, may assume the crime victim's rights." 18 U.S.C. § 3771(e)(2)(B); *see also United States v. Garate*, 482 F.3d 1013 (8th Cir. 2007) (parents of the minor qualify as victims who can exercise the right to be heard); *United States v. Gilmore*, 470 F. Supp. 2d 233 (E.D.N.Y. 2007) (mother asserted right to be heard about the impact child exploitation crime had on her daughter).

This means that a victim has a right of allocution like that of the defendant. The Court of Appeals for the Ninth Circuit has explained:

> [t]he statute was enacted to make crime victims full participants in the criminal justice system. Prosecutors and defendants already have the right to speak at sentencing, *see* Fed.R.Crim.P. 32(i)(4)(A); our interpretation [of the Act] puts crime victims on the same footing. Our interpretation also serves to effectuate other statutory aims: (1) To ensure that the district court doesn't discount the impact of the crime on the victim; (2) to force the defendant to confront the human cost of his crime; and (3) to allow the victim "to regain a sense of dignity and respect rather than feeling powerless and ashamed."

*Kenna v. U.S. Dist. Court for C.D. Cal.*, 435 F.3d 1011, 1016 (9th Cir. 2006) (quoting Jayne W. Barnard, *Allocution for Victims of Economic Crimes*, 77 Notre Dame L. Rev. 39, 41 (2001)). *See also* 18 U.S.C. § 3771(a)(8) (Victims have "the right to be treated with fairness and with respect for [their] dignity and privacy."). Indeed. "[l]imiting victims to written impact statements, while allowing the prosecutor and the defendant the opportunity to address the court, would treat victims as secondary participants in the sentencing process. The CVRA clearly meant to make victims

12

full participants." *Kenna*, 435 F.3d at 1016.

This makes sense, too. Although not constitutional in nature, the right of allocution "is ancient in origin and it is the type of important safeguard that ensures the fairness, and hence legitimacy, of the sentencing process." *United States v. Adams*, 252 F.3d 276, 288 (3d Cir. 2001) (citing *Green v. United States*, 365 U.S. 301, 304-05 (1961)). Accordingly, the Third Circuit has cautioned district courts to "be vigilant in protecting the right to allocution" for a criminal defendant. *United States v. Moreno*, 809 F.3d 766, 778 n.7 (3d Cir. 2016). This admonition should apply with equal force to a victim's right of allocution. In fact, there is no good reason why this should not be the case: Congress has required it with passage of the CVRA and the affirmative duties it imposes. The Third Circuit has tacitly recognized the point: in *Moreno*, where the government committed plain error by cross-examining a defendant after he allocuted, the Court wrote: "'where a violation of the right to allocution has been established,'" the fairness, integrity and public reputation of judicial proceedings are affected. 809 F.3d at 778-79 (quoting *United States v. Paladino*, 769 F.3d 197, 201 (3d Cir. 2014)).

A sentencing court "must hear from the victims, if they chose to speak" because the "CVRA gives victims the right to confront every defendant who has wronged them." *Kenna*, 435 F.3d at 1016-17. *See also* U.S.S.G. § 6A1.5 ("[T]he court shall ensure that the crime victim is afforded the rights described in 18 U.S.C. § 3771 and in any other provision of federal law pertaining to the treatment of crime victims."). In short, the CVRA is intended to give victims an opportunity to actively participate in the sentencing proceedings by orally informing the court how their lives have been impacted by criminal acts. *See United States v. Green*, 389 F. App'x 146, 148-49 (3d Cir. 2010) (finding no plain error from court's inquiry of victim's opinion of possible sentence for defendant).

A victim's right to allocution, therefore, is coequal to that of a defendant's right to allocution. *Compare* Fed. R. Crim. P. 32(i)(4)(B) *with* Fed. R. Crim. P. 32(i)(4)(A)(ii). *See also Kenna*, 435 F.3d at 1016; *United States v. Ward*, 732 F.3d 175, 181 (3d Cir. 2013) (explaining that defendant's right to allocution was codified with promulgation of Rules of Criminal Procedure). This is because the purpose of allocution is to give the defendant an opportunity to "raise mitigating circumstances and to present his individualized situation to the sentencing court," *Moreno*, 809 F.3d at 778 (quoting *Ward*, 732 F.3d at 182). That these admonitions as to the defendant's right to make a personalized statement should apply with equal force to a victim's right to do the same is patent. *See* 18 U.S.C. § 3771(a)(4) (Act's directive that a victim has the right "to be reasonably heard"); *see also* Fed. R. Crim. P. 32(i)(4)(B) (Sentencing court "must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard.").

The victim should not be subjected to cross-examination when providing a statement pursuant to the CVRA. This is because victim statements under the CVRA are not government evidence: they are made pursuant to the victims' "independent right" to be heard at sentencing. *United States v. Vampire Nation*, 451 F.3d 189, 197 n.4 (3d Cir. 2006) ("The right is in the nature of an independent right of allocution at sentencing."). *See also United States v. Parnell*, 2015 WL 5559818 at *3 (M.D. Ga. 2015), *aff'd*, 723 F. App'x 745 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 491 (2018) *and cert. denied*, 139 S. Ct. 353 (2018). For this same reason, multiple courts have agreed that there is no requirement that a crime victim exercising her CVRA rights must be placed under oath. *See United States v. Grigg*, 434 F. Appx. 530, 533 (6th Cir. 2011) (citing cases) ("Every court that has examined this issue has held that there is no requirement to swear in CVRA victims."); *United States v. DeAngelis*, 243 F. App'x 471, 474-75 (11th Cir. 2007) (where sentencing court found unsworn victim statements reliable, defendant unable to challenge the

statements).

To permit the defendant to cross-examine his or her victims following their allocution also would run afoul of the Act's requirement that a crime victim must be treated with fairness, dignity and privacy. 18 U.S.C. § 3771(a)(8). The Act is intended to provide the abused with the opportunity to confront their abusers and to have a say in the sentencing process: an opportunity for catharsis, not interrogation. Aside from the risk that some defendants could use the ability to cross-examine a victim as a final opportunity to inflict additional abuse, requiring a victim to be cross-examined could have a broader chilling effect on other and future victims, who may be dissuaded from exercising their rights under the CVRA to speak at hearings. *See Moreno*, 809 F.3d at 778-79 & n.7 ("Cross-examination … clearly affects a defendant's right to make a statement to the court and subverts the policy goals of Rule 32[.]"). Such an outcome would be inconsistent with the statute's intent of providing victims with "direct standing to vindicate their procedural and substantive rights" and the obligation on the judiciary to 'ensure' those rights are 'afforded.'" *United States v. Turner*, 367 F.Supp.2d 319, 322 (E.D.N.Y. 2005) (quoting § 3771(b)).

Preventing the defendant from cross-examining the victim does not infringe upon any right to confrontation, because no such right exists at sentencing. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) ("[T]he right to confrontation is a trial right."); *United States v. Kikumura*, 918 F.2d 1084, 1100 (3d Cir. 1990) (explaining that "a convicted criminal is entitled to less process than a presumptively innocent criminal defendant") (citation omitted). "Both the Supreme Court and this Court of Appeals have determined that the Confrontation Clause does not apply in the sentencing context and does not prevent the introduction of hearsay testimony at a sentencing hearing." *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007). *See also United States v. Powell*,

650 F.3d 388, 392-93 (4th Cir. 2011) (same) (collecting cases); *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005) (noting that "the right to confrontation is not a sentencing right"). Similarly, while the right to cross-examine a witness is reflected in Federal Rule of Evidence 611, these rules of evidence do not apply to sentencing proceedings. *See* Fed. R. Evid. 1101(d)(3); *United States v. Clark*, 335 F. App'x 181, 184 (3d Cir. 2009); *United States v. Berrios-Miranda*, 919 F.3d 76, 80 (1st Cir. 2019).

Further, preventing cross-examination of victims does not violate a defendant's right to due process. It is settled that as long as a victim's statement possesses "some 'minimal indicium of reliability beyond allegation,'" a court may consider it. *Clark*, 335 F. App'x at 183-84 (rejecting claim that written victim impact statements constituted unreliable hearsay) (quoting *Kikumura*, 918 F.2d at 1102). In *Green*, where a defendant asserted that a prohibition on the cross-examination of the victim violated his due process rights, the Third Circuit found that such an assertion was "refuted by controlling law." 718 F. App'x 141, 142-43 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 232 (2018) (citing *Williams v. New York*, 337 U.S. 241, 250-51 (1949) (holding that consideration of information supplied by witnesses at sentencing who are not subject to cross-examination did not violate Due Process Clause)). *See also United States v. Cabbagestalk*, 184 F. App'x 191, 195 (3d Cir. 2006) (same). Due process with respect to victim statements at sentencing is satisfied if the defendant is afforded the chance to respond in a statement of their own. *See DeAngelis*, 243 F. App'x at 474-75 (Due process is satisfied where defendant "had the chance to respond to the statements" of his victims and defendant had no right to cross-examine victims.).

## VII. IMPOSITION OF SENTENCE

As noted in the PSIR, Foxx has an open state case for his sexual assault of the minor victim in this case. PSIR at ¶ 45. Foxx has pleaded guilty in that case and is scheduled to be sentenced

the day after he appears for his sentencing in federal court on this case (August 7, 2024). Accordingly, the defendant may be sentenced to a term of imprisonment within the Commonwealth of Pennsylvania. Under 18 U.S.C. § 3584, a federal sentencing judge may specifically order a federal sentence to run consecutively with a state sentence. *See Setser v. United States*, 132 S. Ct. 1463, 1468 (2012). Even where a defendant anticipates but has not yet received a sentence of imprisonment, a sentencing court generally has authority under 18 U.S.C. § 3584(a) to order a sentence to run consecutively to the anticipated state sentence as part of its consideration of the § 3553(a) factors. *See Setser*, 132 S. Ct. at 1468. This situation was contemplated by the parties' plea agreement. *See* Doc. No. 54 at 7.

This Court should order at least a portion of Foxx's sentence to run consecutively to any state sentence yet to be imposed. The government urges the Court to reject any request to run his sentence wholly concurrent to the yet imposed state sentence. This is because any sentence received for the open state case would not validate the federal interests involved in the pending federal prosecution. Specifically, the state charges do not account for defendant's documentation of his sexual abuse of his minor victim.

This is a serious case warranting separate punishment to vindicate the violations of federal law admitted to here. Accordingly, the United States submits that upon the Court's consideration of all of the relevant 3553(a) factors, a sentence that is at least partially consecutive to any yet to be imposed term of imprisonment in state court, is appropriate in this case.

## VIII. CONCLUSION

For all of the foregoing reasons, and in consideration of the facts and circumstances of this particular case, the government urges the Court to sentence the defendant to a total term of 276 months (23 years) of imprisonment, run partially consecutive to any potential state sentence,

followed by a term of lifetime supervised release. Such a sentence is warranted, provides just punishment, and is not greater than necessary to address the defendant's crimes and the factors set forth at 18 U.S.C. § 3553(a).

Respectfully submitted,

Eric G. Olshan
United States Attorney


/s/ Heidi M. Grogan
HEIDI M. GROGAN
Assistant U.S. Attorney
PA ID No. 203184
U.S. Attorney's Office
700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219